# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| PATRICE PITTS, *et al.*, | ) |
| | )    Civil Action No.: 1:14-cv-01319 (TSC) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

---

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants, the District of Columbia ("District"), Officer Mark Pugh, and John Doe Police Officers 1-10, by and through undersigned counsel, hereby move the Court for an Order dismissing the Complaint for failure to state a claim upon which relief can be granted.  Defendants seek dismissal because (1) on the face of the Complaint, the defendant officers are entitled to qualified immunity (2) Plaintiffs failed to allege a *Monell* violation against the District; and (3) the officers were not negligent *per se*.

The grounds for this motion are more fully set forth in the accompanying memorandum of points and authorities.  A proposed order is also attached.

## LCvR 7(m) Certificate

Because this motion is dispositive, LCvR 7(m) does not require Defendants to seek Plaintiffs' consent.

Respectfully Submitted,

IRVIN B. NATHAN
Attorney General for the
District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_/s/ Jonathan H. Pittman_
JONATHAN H. PITTMAN [430388]
Chief, Civil Litigation Division Section III

_/s/ Joseph A. González_
JOSEPH A. GONZÁLEZ
Assistant Attorney General
D.C. Bar No. 995057

_/s/ Aaron J. Finkhousen_
AARON J FINKHOUSEN [1010044]
441 4th Street, N.W., Sixth Floor South
Washington, D.C.  20001-2714
202-724-6511 (direct)
aaron.finkhousen@dc.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

PATRICE PITTS, *et al.*,                       )
                                               )   Civil Action No.: 1:14-cv-01319 (TSC)
       Plaintiff,                 )
                                               )
       v.                         )
                                               )
DISTRICT OF COLUMBIA, *et al.*                 )
                                               )
       Defendants.                )
_____)

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants, the District of Columbia, Officer Mark Pugh, and John Doe Police Officers 1-10, by and through undersigned counsel, hereby move the Court for an Order dismissing the Complaint for failure to state a claim upon which relief can be granted.  Defendants seek dismissal because (1) on the face of the Complaint, the defendant officers are entitled to qualified immunity; (2) Plaintiffs failed to allege a *Monell* violation against the District; and (3) the officers were not negligent *per se*.

Plaintiffs allege seven counts of misconduct.  Compl. ¶¶ 80-93.  These seven counts can be conceptually organized as follows: (1) an alleged violation of the Fourth Amendment by the individual officers in acquiring and serving the search warrant

(Counts 1, 2, 3, 5, 7[1]); (2) an alleged *Monell* violation against the District of Columbia (Count 4); and (3) negligence *per se* against the officers for failure to knock and announce (Count 6).   The individual officers are shielded by qualified immunity because Plaintiffs allege no constitutional violation and because the officers' actions did not violate any clearly established rights.   Plaintiffs have failed to allege a *Monell* claim against the District of Columbia because there is no underlying constitutional wrong. Plaintiffs cannot make out a claim for negligence *per se* because Defendants' no-knock entry was justified.

## Introduction

Plaintiffs allege that police officers humiliated and embarrassed them when the officers invaded and searched their home.   Plaintiffs lived with a criminal but had committed no crime.   Thus, they conclude no warrant to search their home should have issued.   However,

> The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty. Valid warrants will issue to search the innocent, and people like [plaintiffs] unfortunately bear the cost. Officers executing search warrants on occasion enter a house when residents are engaged in private activity; and the resulting frustration, embarrassment, and humiliation may be real, as was true here. When officers execute a valid warrant and act

---

[1]      In Count 7, Plaintiffs mistakenly allege a violation of the Fifth Amendment.  It is well established that the Fourth Amendment reasonableness standard applies to all of the conduct alleged in the Complaint.   *See, e.g., Terry v. Ohio*, 392 U.S. 1, 28 (1968) (holding the reasonableness of a search is subject to the Fourth Amendment reasonableness inquiry).

> in a reasonable manner to protect themselves from harm,
> however, the Fourth Amendment is not violated.

*Los Angeles Cnty., California v. Rettele*, 550 U.S. 609, 615-16 (2007).

### Nature of the Case

On March 26, 2013, officers of the Metropolitan Police Department ("MPD") executed a search warrant at 3921 Fourth Street, SE, #2, Washington, D.C.  Compl. ¶ 1; Compl. Ex. 1.  The officers detained the occupants of the apartment, including Plaintiffs, in the living room and kept them handcuffed during the search.  Compl. ¶¶ 1-2.  The officers pulled down Michael Pitts's pants and searched his private parts.  Compl. ¶ 1. Plaintiffs' allege that the officers further mistreated a third party.  Compl. ¶¶ 67-72.  The officers also questioned Plaintiffs during the search and allegedly stated that the individuals could lose their home if contraband was found.  Compl. ¶¶ 59, 73.  The officers thoroughly searched the home, leaving the house, and Plaintiffs' belongings, disheveled.  Compl. ¶¶ 77-78  The officers found "no guns, ammunition or other contraband."  Compl. ¶¶ 5, 77.

The warrant was supported by Officer Mark Pugh's training, experience, the arrest of Tyrone Pitts, and information obtained during that arrest.  Compl. at Ex. 1. Plaintiffs allege that Officer Pugh's training and experience would not have allowed him to conclude as he did based on statistics of the success rates of similar searches. Compl. ¶ 30.  Plaintiffs allege that Officer Pugh omitted relevant information, including that gun possessors commonly possess guns they do not own and that gun possessors

3

commonly retain items sought in the warrant in places other than their homes.  Compl. ¶¶ 33-35.  Plaintiffs also allege the information supporting probable cause was obtained from an illegal search and could not be used to support probable cause.  Compl. ¶¶ 42-45.

Plaintiffs further allege that the MPD adopted a "pattern, policy, and practice" of permitting its officers to engage in searches like the search at issue here and improperly trains and supervises its officers in executing search warrants.  Compl. ¶¶ 37-41.

Finally, Plaintiffs allege the officers used unnecessary force, failed to knock and announce, and lacked probable cause.  Compl. ¶¶ 1-3.

## Standard of Review

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  In *Ashcroft v. Iqbal*, the Supreme Court set forth a "two-pronged approach" that a court may utilize when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  While a court generally must consider a plaintiff's factual allegations as true, the court may first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*  Thus, the basic pleading

standards "demand [] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Once the court has determined that the plaintiff has asserted "well-pleaded factual allegations," the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Applying these standards to the instant case, the Court should dismiss the Complaint.

<u>**Argument**</u>

**I.     The individual officers are entitled to qualified immunity.**

In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the Supreme Court set forth a two-step process for determining whether qualified immunity should apply in a particular case. The first inquiry under *Saucier* is whether the facts, taken in the light most favorable to the party claiming to have been injured, show that the government official's conduct violated a constitutional right. *Id.* at 201. If no constitutional right was violated, qualified immunity is appropriate. *Id.* If the plaintiff's rights were violated, the second inquiry is whether, "in light of the specific context of the case," the right in question was "clearly established." *Id.* A right is "clearly established" if "the contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing

violates that right." *Butera v. District of Columbia*, 235 F.3d 637, 646 (D.C.Cir.2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, (1987)).[2]

Claims of qualified immunity should be resolved "at the earliest possible stage in litigation." *Katz*, 533 U.S. at 200-01 (quotation marks and citation omitted).

When police officers obtain a warrant before executing a search, they are ordinarily entitled to rely on the issuing judge's determination that probable cause exists. *See United States v. Spencer*, 530 F.3d 1003, 1006-07 (D.C. Cir. 2008). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable ... will the shield of [qualified] immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (internal citation omitted).

In the context of evaluating the reasonableness of the means used in executing a search warrant, qualified immunity will only be lost where (1) the means used were unreasonable and (2) the contours of the right to be free from the means used are sufficiently clear that a reasonable officer would understand his conduct violates the right. *See Butera*, 235 F.3d at 646.

a. **The officers are shielded by qualified immunity for their reliance on the warrant.**[3]

---

[2]       The sequence of the two steps is now discretionary, as the Supreme Court has made clear that courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In determining whether an affidavit supports probable cause to support a search warrant, a judge must take a common-sense approach and determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Courts have routinely rejected hypertechnical, post hoc reviews of probable cause. *See, e.g., id.* at 236. The Constitution requires only "the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Florida v. Harris*, 133 S.Ct. 1050, 1055 (2013) (internal quotations omitted) (alteration in original). To determine whether an affidavit could support probable cause where a plaintiff alleges omission of material information, "logic dictates that the affidavit be read as if the allegedly relevant material were included to determine whether probable cause would have been undetermined." *Ogden v. Dist. of Columbia*, 676 F. Supp. 324, 327 (D.D.C. 1987) *aff'd in an unpublished opinion*, 861 F.2d 303 (D.C. Cir. 1988).

**1. The warrant was supported by probable cause.**

Here, the affidavit provides that:

1) The affiant had special training in the field of "illegal possession of firearms;"
2) The affiant, based on his experience, training, and knowledge gained from other experienced officers, investigators, and detectives believed that:
   a) Gun owners "commonly retain," in their homes, gun paraphernalia including, original packaging, maintenance equipment, additional parts, protective equipment, and records tending to demonstrate proof of ownership;

---

[3]    Because whether a warrant is supported by probable cause is a question of law, Plaintiffs' allegations that the warrant was not supported by probable cause need not be presumed true on motion to dismiss. *See Iqbal*, 556 U.S. at 679.

b) Gun owners typically possess additional ammunition in their homes by virtue of the common means for obtaining ammunition;

c) Gun owners "not uncommon[ly]" own multiple guns and keep guns in their homes;

d) Persons who illegally possess guns frequently snap selfies depicting them holding the illegal guns; and

e) Gun paraphernalia is likely to remain undisturbed post-arrest;

3) Street robberies involving firearms were common in the area around the apartment to be searched;

4) Officers have received information on "numerous occasions" that an individual who frequents the front of the home has been armed with a handgun;

5) That, upon a consent-search, officers found a pistol on Tyrone Pitts, who resided at the apartment to be searched;

6) That an occupant of the apartment to be searched admitted Tyrone Pitts resided therein; and

7) That Tyrone Pitts had no license to possess a firearm or ammunition.

Compl. at Ex. 1.

Plaintiffs allege that the initial search of Tyrone Pitts was non-consensual and, therefore, unconstitutional.[4] Compl. ¶¶ 44-45. This statement is irrelevant to Plaintiffs' claim. Use of unlawfully obtained evidence "works no new Fourth Amendment wrong." *United States v. Leon*, 468 U.S. 897, 905-906 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 354, 94 S.Ct. 613, 623, 38 L.Ed.2d 561 (1974). In fact, evidence obtained in derogation of the Fourth Amendment is regularly admitted against co-conspirators or co-defendants who have no personal right of privacy in the places

---

[4]     Plaintiffs' allegation is incorrect. Here, given Tyrone Pitts' behavior, his location, and information known to the officers about the area, the officers had reasonable suspicion to perform a patdown search. *See Terry*, 392 U.S. at 30 (requiring a reasonable and articulable suspicion of danger to justify a patdown search). Upon feeling the gun during the patdown search, Officer Pugh was justified in seizing the weapon because he immediately determined it to be a weapon. *See id.* at 29 (limiting a patdown search to seizure of "guns, knives, clubs, or other hidden instruments for the assault of the police officer")

searched or the evidence seized. *Rakas v. Illinois*, 439 U.S. 128 (1978); *Brown v. United States*, 411 U.S. 223 (1973); *Wong Sun v. United States*, 371 U.S. 471, 491–492 (1963). *Cf. United States v. Payner*, 447 U.S. 727 (1980). Thus, the source of the evidence has no bearing on its usefulness in determining probable cause, Plaintiffs' allegation to the contrary notwithstanding. *Iqbal*, 556 U.S. at 679 (holding a Court need not presume the truth of legal conclusions found in a complaint).

Thus, in determining probable cause, the affidavit stands as written. The affidavit plainly supports a finding of probable cause. It contains exactly the kind of evidence upon which prudent people rely in reaching reasonable beliefs. A known resident of the apartment illegally possessed a firearm. Compl. Ex. 1. Based on the officer's training and experience with firearms and other officer's training and experience with firearms, the officer believed that persons like Tyrone Pitts routinely kept firearms-related items in their homes and that those items would likely remain in the home even after Tyrone Pitts's arrest. Compl. Ex. 1. Moreover, "observations of illegal activity occurring away from the suspect's residence can support a finding of probable cause, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence." *United States v. Thomas*, 989 F.2d 1252, 1255 (D.C. Cir. 1993); *see also United States v. Hodge*, 246 F.3d 301, 306-07 (3rd Cir. 2001) (holding probable cause existed where arrest occurred outside of home, officers reasonably believed defendant resided in home, and

defendant was arrested for possession with intent to distribute drugs). Here, the affidavit establishes that the officer's training, experience, and knowledge about gun crimes provides "a reasonable basis to infer" "that relevant evidence will be found in the residence." Therefore, the warrant is supported by probable cause.

Plaintiffs argue against a finding of probable cause by alleging (1) that *United States v. Hopkins* foreclosed the possibility of finding probable cause under these circumstances and (2) that the officer's training and experience was unreliable.

The Court in *United States v. Hopkins* admitted evidence against a criminal defendant even where probable cause was lacking because the officers' actions were objectively reasonable. 128 F. Supp. 2d 1, 9-10. In *Hopkins*, the officers lacked probable cause because they made an assumption about which they did not aver to have any basis. *Id.* at 9. The officers relied on training and experience dealing with narcotics to make inferences about gun crimes. *Id.* at 7. Thus, their training and experience could not support the assumption they made. This case is different. The officer here relied on his training and experience and other officers' training and experience in investigating gun crimes for the basis of an assumption about gun crimes. Compl. Ex. 1. Therefore, *Hopkins* provides no bar to finding probable cause here.[5]

---

[5]     Moreover, the Supreme Court has routinely rejected categorical approaches to finding probable cause and, instead, insists upon a case-by-case approach. *See, e.g., Gates*, 462 U.S. at 239 n.11 ("There are so many variables in the probable cause equation that one determination will seldom be a useful 'precedent' for another.").

Plaintiffs further argue that the officers' training and expertise were not reliable based upon the success rate of similarly-justified search warrants seeking guns.[6]   The Supreme Court recently rejected a statistics-based approach to determining the reliability of dog sniffs as the "antithesis of the totality-of-the-circumstances analysis." *Harris*, 133 S.Ct. at 1056.  "A gap as to any one matter . . . may be compensated for . . . by a strong showing as to other indicia of reliability."  *Id.* (quoting *Gates*, 462 U.S. at 233). Moreover, well-defined standards like proof beyond reasonable doubt or a preponderance of the evidence have no place in determining probable cause.  *Gates*, 462 U.S. at 235.  Rather, "only a probability" of criminal conduct is required.  *Id.*  Plaintiffs' post hoc review of statistical data attempts to quantify probable cause, a practice which the Supreme Court has expressly condemned.  *Harris*, 133 S.Ct. at 1055 ("The test for probable cause is not reducible to 'precise definition or quantification.' ") (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

### 2.  The warrant was not so lacking in indicia of probable cause as to render the officers' belief in its validity as unreasonable.

"For an officer to lose the shield of immunity, a plaintiff must demonstrate that if the omitted material had been included, 'a reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not

---

[6]    The District notes that Plaintiff's cited statistic is unhelpful.  Plaintiff alleges "91% of such warrants searching for guns in the District failed to find any guns in the home."  Compl. ¶ 4.  This does not establish how many of the warrants led to the discovery of gun paraphernalia or other contraband.

have applied for a warrant.' "  *Ogden*, 676 F. Supp. at 328 (quoting *Malley* 475 U.S. at 344-45) (alteration in original).  Thus, the Court must determine whether the officers' conduct was objectively reasonable.  *Malley*, 475 U.S. at 344.  On the face of the Complaint, Plaintiffs have failed to make this showing.

Plaintiffs allege that the affidavit failed to include (1) information that discovery of the gun was a product of an illegal search and (2) information related to MPD department-wide statistics regarding the success rate of search warrants supported by training and experience.[7]  Compl. ¶¶ 4, 45.  As discussed above, information that the officers found the gun in derogation of Tyrone Pitts's right to be free from unreasonable searches and seizures is irrelevant to finding probable cause because Fourth Amendment rights are individual rights, and Plaintiffs had no Fourth Amendment right to privacy in the gun or its location when found.  Likewise, information related to the success rate of past MPD searches is not relevant because it does not reflect on Officer Pugh's (the affiant's) training and experience and because it does not negate the possibility of success, and cannot, therefore, eliminate his reasonable belief.[8]  Thus, this

---

[7]      Plaintiffs also allege that the affidavit should have reached other conclusions based on the officer's training and experience.  Compl. ¶¶ 18, 33, 34.  That evidence is likely to be found elsewhere, outside the home, is irrelevant to whether evidence is also likely to be found inside the home.

[8]      It appears Plaintiffs' allegations on this point relate to the first criteria of the good faith exception to the exclusionary rule discussed in *Leon*: the good faith exception to the exclusionary rule does not apply where the "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."  *Leon*, 468 U.S. at 923.  Plaintiffs allege that

additional information does not strip the warrant application of all "indicia of probable cause" nor does it "render official belief in" a finding of probable cause "unreasonable."[9]  *See Malley*, 475 U.S. at 344-45.

Plaintiffs' assertion that *Hopkins* has precedential value as a substantially similar case (Compl. ¶ 4) necessarily concedes that the officers in this case reasonably believed in the validity of the warrant they obtained.  The Court in *Hopkins* found that, even though the officer's affidavit did not support a finding of probable cause, because the officer followed the appropriate procedures in acquiring the warrant, including – as here – obtaining the signature of an Assistant United States Attorney, the warrant, and the officers' reliance thereupon, was in good faith and was reasonable.  *Hopkins*, 128 F. Supp. 2d at 10.  Although *Hopkins* dealt with the admissibility of evidence, it found that the officers, in circumstances Plaintiffs allege to be similar, reasonably relied on the search warrant.

### b.  The means of executing the search warrant were reasonable.

---

Officer Pugh's affidavit falsely represented that Mr. Pitts consented to a search (Compl. ¶ 44) and that Officer Pugh relied on his training rather than what other MPD officers represented as their training (Compl. ¶ 34).  Whether Mr. Pitts consented to be searched is irrelevant, as discussed above.  Other officers' training and experience and Plaintiffs' allegations about gun ownership in the District of Columbia (Compl. ¶¶ 30, 33) are irrelevant to Officer Pugh's training and experience.

[9]      Plaintiff assigns bad faith to Officer Pugh.  Compl. ¶ 45.  While the Court should presume this assertion to be true in evaluating the Defendants' Motion to Dismiss, Officer Pugh's subjective belief is irrelevant.  *See, e.g., Bond v. United States*, 529 U.S. 334, 339 n.2 (2000) ("The parties properly agree that the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment.").

"The manner in which the seizure and search were conducted is, of course, as vital a part of the inquiry as whether they were warranted at all." *Terry*, 392 U.S. at 28. The execution of the warrant here was also reasonable.  Plaintiffs allege three unreasonable actions by the officers in executing the warrant: (1) no-knock entry; (2) searching Michael Pitts; and (3) using handcuffs to detain Plaintiffs.

### 1.  No-knock entry was reasonable

"In order to justify a no-knock entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997).  "This showing is not high . . . ." *Id.*

Here, the officers had obtained a valid search warrant to look for guns or gun paraphernalia.  Compl. Ex. 1 at 1.  The officers arrested a resident of the home for illegal possession of a firearm.  Compl. Ex. 1 at 3.  The locale in which Tyrone Pitts was arrested and in which Plaintiffs lived had a reputation for "large amounts of street robberies involving firearms."  Compl. Ex. 1 at 3.  The officers had a reasonable belief that there may be additional weapons and ammunition at the home.  Compl. Ex. 1 at 2. The officers also knew there were reports of an individual carrying a gun who frequented the front of this apartment building.  Compl. Ex. 1 at 3.  These five factors – a resident of the apartment had been found to possess a gun, high crime rates involving

14

firearms in the area, belief that firearms were on the premises, reports of an individual armed with a gun frequenting the area, and belief that at least 39[10] additional rounds of ammunition were located on the premises – provide a reasonable suspicion that knocking and announcing would be dangerous or futile because of the likelihood that occupants of the apartment were armed and had a propensity towards violent crime.

### 2. Searching Michael Pitts was reasonable.

"A warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). This authority is justified for three reasons: (1) the possibility of flight should illegal evidence be found; (2) ensuring the safety of all involved; and (3) increasing the efficiency of the search. *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005). "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Chimel v. California*, 395 U.S. 752, 762-63 (1969). Searches incident to arrest are equally justified by "the need to preserve evidence . . . for later use at trial." *United States v. Robinson*, 414 U.S. 218, 234 (1973). Thus, the same reasons that support searches incident to arrest support searching individuals during the execution of a search warrant. Therefore, the officers' detention and search of Plaintiffs was reasonable.

---

[10]     The affidavit states that the smallest number of rounds that can be legally obtained at a time is 50.  Compl. Ex. 1 at 2.  Eleven rounds were found in the pistol.  Compl. Ex. 1 at 3.

Searching Michael Pitts's private areas was also reasonable.  In the interests of officer safety, officers are permitted to expose even innocent detainees when enacting a lawful search warrant to embarrassment and humiliation.  *Los Angeles County, California v. Rettele*, 550 U.S. 609, 615-616 (2007) (holding requiring two naked occupants of a home being searched to stand up from their bed with their arms raised for one to two minutes was reasonable because of concerns for officer safety).  Further, officers are permitted to search "private areas" of an arrestee's person incident to arrest, although, ordinarily, they are encouraged to use a private location.  *United States v. Murray*, 22 F.3d 1185, 1994 WL 119009, *1 (D.C. Cir. 1994) (unpublished).  Here, Michael Pitts was searched in his home, which was a private location.  Compl. ¶ 1.  The search was limited in time and intended to find concealed evidence and prevent risks to officer safety.  Thus, the search was reasonable.

### 3.   Using handcuffs to detain the Plaintiffs was reasonable.

Using handcuffs to detain an individual while executing a search warrant is undoubtedly an additional intrusion, but may be justified in light of the risk of flight, ensuring safety, and promoting an efficient search.  *Mena*, 544 U.S. at 98-99.  Just as in *Mena*, this was "no ordinary search."  *Mena*, 544 U.S. at 100.  Here, the search warrant specifically contemplated searching for guns and evidence of guns.  Compl. Ex. 1 at 1.  Moreover, the apartment was located in a high crime area, and the officers knew that a resident of the home was found illegally carrying a gun.  Compl. Ex. 1 at 3-4.  Although

Plaintiffs were handcuffed, they were permitted to remain seated on their living room couch.  Compl. ¶ 57.  Thus, the officers reasonably detained Plaintiffs.

Therefore, the Court should dismiss the Complaint with prejudice because there was no underlying constitutional violation and the officers' reliance on the search warrant was objectively reasonable.

## II.   Because there is no underlying constitutional violation, Plaintiffs have not pleaded a *Monell* claim.

Plaintiffs bring a *Monell* claim against the District in Count Four of the Complaint.  Compl. ¶ 87.[11]  A municipality's liability under § 1983 is limited.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.").  A prima facie case of a *Monell* claim requires both (1) a "predicate constitutional violation" and (2) "that a custom or policy of the municipality caused the violation." *See Baker v. Dist. Of Columbia*, 326 F.3d 1302, 1305 (D.C. Cir. 2003) (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992)); *accord Brown v. Dist. of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008); *Konah v. Dist. of Columbia*, 971 F. Supp. 2d 74, 81 (D.D.C. 2013).

---

[11]     Count 4 states: "The obvious lack of probable cause and false and reckless statements and omissions were the result of a policy, pattern, and custom of such conduct by the MPD and the result of MPD's failure to properly train and supervise its officers."  Compl. Count 4 Caption (formatting omitted).  Defendants' treat this as a *Monell* claim against the District.

Because Plaintiffs' claims against the individual officers fail, Plaintiffs have failed to demonstrate the requisite "predicate constitutional violation" for *Monell* liability in this case. Thus, the Court should dismiss Count Four with prejudice.

### III.   Plaintiffs have not pleaded a case of negligence *per se*.

Plaintiffs fail to plead negligence *per se*. Plaintiffs fail to allege the statute that provides the basis for their claim. Compl. ¶¶ 90-91. However, it appears Plaintiffs are relying on D.C. Code § 23-524, which provides that all search warrants must be executed in compliance with 18 U.S.C. § 3109. D.C. Code § 23-524(a). In turn, 18 U.S.C. § 3109 imposes a knock and announce requirement. Even assuming Plaintiffs rely on these statutes, they have failed to plead a prima facie cause of negligence *per se*.

Section 3109 cannot support negligence *per se* because it is merely a codification of the common law. Where a statute merely clarifies or defines the duty of care, it does not alter the common law of negligence. *Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686, 692 (D.C. Cir. 1987) (citing *Bowman v. Redding & Co., Inc.*, 449 F.2d 956, 966 (D.C. Cir. 1971)). It is well-settled that § 3109 merely defines the common law duty. *Sabbath v. United States*, 391 U.S. 585, 591 n.8 (1968). Therefore, § 3109 cannot support negligence *per se*.

Even if § 3109 could support negligence *per se*, Plaintiffs' claim would fail because defendants failure to knock and announce was reasonable, as discussed *supra*, Part I (b)(1). *See id.* (applying the same constitutional standard to § 3109).

18

## Conclusion

For the reasons stated above, the Court should dismiss the Complaint with prejudice.

Respectfully Submitted,

IRVIN B. NATHAN
Attorney General for the
District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Jonathan H. Pittman*
JONATHAN H. PITTMAN [430388]
Chief, Civil Litigation Division Section III

*/s/ Joseph A. González*
JOSEPH A. GONZÁLEZ
Assistant Attorney General
D.C. Bar No. 995057

*/s/ Aaron J. Finkhousen*
AARON J FINKHOUSEN [1010044]
441 4th Street, N.W., Sixth Floor South
Washington, D.C.  20001-2714
202-724-6511 (direct)
aaron.finkhousen@dc.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————
PATRICE PITTS, *et al.*,                )
                                        )   Civil Action No.: 1:14-cv-01319 (TSC)
      Plaintiff,                )
                                        )
           v.                )
                                        )
DISTRICT OF COLUMBIA, *et al.*          )
                                        )
      Defendants.               )
———————————————————————)

## ORDER DISMISSING THE COMPLAINT

Upon consideration of the Defendants' Motion to Dismiss, any response thereto, and the entire record, it is by the Court this _____ day of _____, 2014, **ORDERED** that the Defendant's Motion to Dismiss is **GRANTED**; and it is further **ORDERED** that the complaint is dismissed with prejudice.

_____
TANYA S. CHUTKAN
DISTRICT COURT JUDGE