UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATRICE PITTS, *et al*.,  )  | |
|  ) | Civil Action No.: 1:14-cv-01319 (TSC) |
| Plaintiff,  ) | |
|  ) | |
| v.  ) | |
|  ) | |
| DISTRICT OF COLUMBIA, *et al*.,  ) | |
|  ) | |
| Defendants.  ) | |
|  ) | |

## DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), the District of Columbia ("District"), Officer Mark Pugh, and John Doe Police Officers 1-10 ("Defendants" unless otherwise specified), by and through undersigned counsel, moved the Court for an order dismissing the Complaint because (1) on the face of the Complaint, the defendant officers are entitled to qualified immunity; (2) Plaintiffs failed to allege a *Monell* violation against the District; and (3) the officers were not negligent *per se*. ECF No. 7.

Plaintiffs opposed the Defendants' motion by (1) disputing whether the warrant was supported by probable cause and (2) contesting the reasonableness of the search.[1]  ECF No. 10 ("Pls.' Mem. Opp'n").  Plaintiffs' opposition fails because (1) it takes an erroneous approach to evaluating probable cause, and (2) the allegations of the complaint establish that the search was reasonable.

---

[1]   Because Plaintiffs do not respond to Defendants' argument that their claim for negligence per se (Count Six) is without merit, the Court may dismiss Count Six. *See FDIC v. Bender*, 127 F.3d 58, 68 (D.C. Cir. 1997) (noting that arguments not addressed in an opposition brief may be treated as conceded); *see also Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 201 (D.D.C. 2009) (citing *Bender*).

**Argument**

I. **Plaintiffs' Opposition errs on probable cause.**

Plaintiffs make three arguments in their opposition on probable cause: (1) there is no evidentiary nexus between the place searched and Officer Pugh's affidavit; (2) success and failure statistics are the gold standard of probable cause, and (3) the fruit of the poisonous tree doctrine applies to this case.  Each argument fails.

   a. **Evidentiary nexus between Plaintiffs' home and Tyrone Pitts's firearm**

Plaintiffs argue that there is no evidentiary nexus between their home and Tyrone Pitts's firearm.  Pls.' Mem. Opp'n at 3-12.  Plaintiffs are wrong.

The evidentiary nexus arises not from the possibility of finding, in Plaintiffs' home, evidence of a gun distribution ring but from the possibility that further evidence of the crime of gun possession could be found in Tyrone Pitts's home of record.  *See United States v. Thomas*, 989 F.2d 1252, 1255 (D.C. Cir. 1993) ("[O]bservations of illegal activity occurring away from the suspect's residence can support a finding of probable cause, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence.")  As explained in Officer Pugh's affidavit supporting the warrant, there is a reasonable basis to infer from the crime of gun possession that further evidence of one's ownership of a gun will be found in one's home.  Compl. Ex. 1 at 4.  Plaintiffs' observation that there are no similar cases of persuasive authority is unremarkable: there are no similar Circuits where gun possession outside the home was completely outlawed.  *See Palmer v. Dist. of Columbia*, 2014 WL 3702854 (D.D.C. July 24, 2014) ("The District of Columbia appears to be the only jurisdiction that still has such a complete ban on the carrying of ready-to-use handguns

outside the home."). Therefore, the nature of the illegal act provides the evidentiary nexus between the gun and Plaintiffs' home.

The affidavit supports probable cause to search the Plaintiffs' home. Plaintiffs argue that the greater number of possible places an item can be found, the less likely it is to be found at any particular place. Pls.' Mem. Opp'n at 20-21. But this argument has no relevance to the type of search at issue here. The warrant application states that the items sought "are almost always stored in the gun possessor's home." Compl. Ex. 1 at 2.

Plaintiffs place considerable reliance on cases from other circuits and other district courts. Pls.' Mem. Opp'n at 13-15. However, Plaintiffs fail to point out a "consensus of cases of persuasive authority" and cannot point to any controlling precedent that could show the officers here violated a clearly established right. *See Youngbey v. March*, 676 F.3d 1114, 1117 (D.C. Cir. 2012) (requiring a "consensus of cases of persuasive authority" or a controlling case to appraise officers of a clearly established right). Thus, the officers are entitled to qualified immunity.

Moreover, Plaintiffs' reliance on *Hopkins* is misplaced. *See* Pls.' Mem. Opp'n at 13-14 (discussing *Hopkins*). *Hopkins* is not controlling precedent. *United States v. Hopkins*, 128 F. Supp. 2d 1 (D.D.C. 2000). Furthermore, its holding was not, as Plaintiffs represent, that training and experience could not support probable cause for a search warrant following an arrest for possession of a firearm. *See* Pls.' Mem. Opp'n at 13. Instead, *Hopkins* held that training and experience related to *narcotics* arrests and searches had no bearing on *gun* arrests or searches for evidence of a gun distribution ring. *Hopkins*, 128 F. Supp. 2d at 7-8 (holding it unreasonable to infer that an individual arrested with a gun was involved in a gun distribution ring as would be reasonable with narcotics).

   b. **Statistics are not the gold standard of probable cause.**

Plaintiffs treat statistics as the gold standard of probable cause and assert that warrants like the one at issue categorically cannot rest on probable cause because their statistical success rates are insufficient. Pls.' Mem. Opp'n at 16-17. Plaintiffs are wrong.

Statistics are of limited value in determining probable cause. Statistics based on search success rates have relatively limited import to probable cause because errors may abound in the records. *See Florida v. Harris*, 133 S.Ct. 1050, 1056 (2013) (discussing statistics related to dog sniffs). Just as in *Harris*, officers may not have applied for search warrants each time they arrested an individual for unlawful gun possession. Moreover, officers may have overlooked relevant evidence during the execution of past search warrants, creating false negatives. In addition, compatriots could remove guns or gun paraphernalia before officers have an opportunity to search the location. Further, Plaintiffs' cited statistics relate only to 56 warrants – not nearly large enough a sample size to draw any reliable conclusions. *See* Pls.' Mem. Opp'n at 4.

### c. Fruit of the poisonous tree doctrine

Plaintiffs argue that the fruit of the poisonous tree doctrine applies to their case. Pls.' Mem. Opp'n at 23-29. Plaintiffs are wrong.

Plaintiffs lack standing to challenge the search of Tyrone Pitts and, thus, cannot challenge the use of the evidence obtained in the warrant application. Plaintiffs cite six cases for the proposition that they have standing to challenge the search of Tyrone Pitts. Pls.' Mem. Opp'n at 23-27. None of the cited cases supports the proposition. *See Segura v. United States*, 468 U.S. 796, 814 (1984) (discussing the independent source rule and ruling the evidence admissible); *Alderman v. United States*, 394 U.S. 165, 176-77 (1969) (discussing the exclusionary rule where search of defendant's home was based on illegal eavesdropping of defendant's home); *Murray v.*

*United States*, 487 U.S. 533, 540 (1988) (discussing the independent source rule and admitting the evidence discovered); *James v. United States*, 418 F.2d 1150, 1151 (D.C. Cir. 1969) (admitting evidence under the independent source rule after where criminal defendant had reasonable expectation of privacy in his own garage); *United States v. Reilly*, 76 F.3d 1271, 1280 (2nd Cir.1996) (discussing evidence supporting search warrant that was illegally obtained from criminal defendant's curtilage); *United States v. Davis*, 430 F.3d 345, 358 n.4 (6th Cir. 2005) (holding criminal defendant had "no standing to challenge the search of [co-defendant's] vehicle or to argue that subsequent searches were tainted by this initial search" after excluding the evidence obtained from the search of the vehicle and subsequent searches based on the evidence obtained in the vehicle against the co-defendant).

As is evident from the cases upon which Plaintiffs rely, there is no Fourth Amendment violation in using evidence obtained in violation of Tyrone Pitts's rights against Plaintiffs, and Plaintiffs have no standing to challenge the underlying search. In *Davis*, the Sixth Circuit explained the consequences of lacking Fourth Amendment standing to challenge the search of another:

> In this case, the search of Davis's residence and the storage locker may be constitutionally impermissible as a result of the search of Davis's vehicle in violation of Davis's Fourth Amendment rights. Presley cannot establish, however, that the search of Davis's vehicle violated Presley's Fourth Amendment rights. Presley has no reasonable expectation of privacy either in Davis's vehicle or in the items seized from Davis's vehicle, because he had neither a property nor possessory interest in them. In fact, Presley denied having any association with the evidence recovered from Davis's car. Therefore, Presley has no standing to challenge the search of Davis's vehicle *or to argue that subsequent searches were tainted by this initial search*.

*Davis*, 430 F.3d at 360 (internal citations and quotation marks omitted) (emphasis added).[2] Therefore, Plaintiffs cannot challenge the search of Tyrone Pitts.

Because Plaintiffs cannot challenge the search of Tyrone Pitts, they cannot assert that the search was unconstitutional or argue that the search warrant was tainted by the search of Tyrone Pitts.  *See id.*  Therefore, the evidence obtained from Tyrone Pitts contributes to finding probable cause.

## II.   The search was reasonable.

Plaintiffs contend the search was unreasonable for five reasons: the officers' failure to knock and announce, the search of Michael Pitts, the extended search for drugs, the use of handcuffs, and the search violated the Fifth Amendment.  Pls.' Mem. Opp'n at 29-43.  Plaintiffs err on each of these points.

### a.   The knock and announce rule

Plaintiffs argue that a reasonable officer would have known his conduct violated the knock and announce rule.  Pls.' Mem. Opp'n at 29-35.  Plaintiffs misinterpret *Youngbey* and misplace their reliance on several cases, and, therefore, Plaintiffs fail to allege that they had a clearly established right.

Plaintiffs misinterpret *Youngbey*.  Plaintiffs represent that *Youngbey* was a close case on the knock and announce rule and that it upheld a no-knock entry.  Pls.' Mem. Opp'n at 33.  It was not.  *Youngbey* states, "We need not address on this appeal whether the officers' no-knock, nighttime search violated appellees' Fourth Amendment rights."  *Youngbey*, 676 F.3d at 1117.  Thus, *Youngbey* offers no guidance on whether a particular no-knock entry violated the

---

[2]   Plaintiffs argue that Defendants' reliance on criminal cases concerning Fourth Amendment rights is misplaced.  Pls.' Mem. Opp'n at 26.  Plaintiffs' argument is wrong.  *See, e.g., Katz v. United States*, 389 U.S. 347, 351-52 (1967) (applying Fourth Amendment criminal law to civil lawsuit under 42 U.S.C. § 1983).

constitution. Instead, *Youngbey* held that there was no controlling precedent or consensus of cases of persuasive authority that could establish the officers' no-knock entry violated the Fourth Amendment and that the officers were, therefore, entitled to qualified immunity. *Youngbey* 676 F.3d at 1117.

Plaintiffs rely on several cases that each dealt with only one of the five factors the officers faced here. Pls.' Opp'n at 30-33. Plaintiffs reliance is misplaced. *Richards* upheld the no-knock search at issue and stated there was no drug exception to the knock and announce rule. *Richards v. Wisconsin*, 520 U.S. 385, 396 (1997). *Singleton* and *Granville* concerned only the propensity of violence by drug dealers – the categorical approach explicitly rejected in *Richards*. *United States v. Singleton*, 441 F.3d 290, 293 (4th Cir. 2006); *United States v. Granville*, 222 F.3d 1214, 1219 (9th Cir. 2000). *Moore* concerned the presence of firearms and the possibility of destruction of evidence. Plaintiffs also rely on *Bates* and *Marts*; however, these cases predate *Richards* and use the wrong standard. *Compare United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996) (requiring exigent circumstances) *and United States v. Marts*, 986 F.2d 1216, 1218 (8th Cir. 1993) (same) *with Richards* 520 U.S. at 394 (requiring reasonable suspicion to justify no-knock entry). Thus, the cases upon which Plaintiffs rely establish, at best, only that one factor – the propensity of drug dealers to engage in violence, a factor notably not at issue here – cannot create a reasonable suspicion justifying a no-knock entry. However, here, there are five factors leading to reasonable suspicion: a resident of the apartment had been found to possess a gun, a high crime rates involving firearms in the area,[3] a reasonable belief that firearms or firearms paraphernalia were on the premises, reports of an individual armed with a gun

---

[3]  Plaintiffs object to this statement by insinuating it relates to race and claiming it is not present in the Complaint. Pls.' Mem. Opp'n at 28-29. Both accusations are false. *See* Compl. Ex. 1 at 2 ("These areas are known for having large amounts of street robberies involving firearms.").

7

frequenting the area, and a belief that at least 39 additional rounds of ammunition were located on the premises. Therefore, Plaintiffs offer no "consensus of cases of persuasive authority" that would have put the officers here on notice that their actions violated a clearly established right. *See Youngbey*, 676 F.3d at 1117.

### b. The search of Michael Pitts

Plaintiffs argue that strip searches are not permitted without justification even when arresting a person. Pls.' Mem. Opp'n at 36. Plaintiffs are wrong. Plaintiffs cite *Stearns* for their proposition. Pls.' Mem. Opp'n at 36 n.18 (citing *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)). *Stearns* did not concern the situation presented here. *Stearns*, 615 F.3d at 1281 (discussing strip search in jail). Moreover, a single case of persuasive authority cannot establish that Michael Pitts had any clearly established rights. *See Youngbey*, 676 F.3d at 1117 (requiring a "consensus of cases of persuasive authority" or a controlling case to appraise officers of a clearly established right).

### c. The extended search for drugs

Plaintiffs argue Defendants unlawfully searched for drugs in the home. Pls.' Mem. Opp'n at 38. Plaintiffs are wrong.

Defendants did not unlawfully search for drugs in the home. The only fact alleged in the Complaint that relates to searching for drugs is an unidentified officer's question to Michael Pitts concerning the location of drugs in the apartment. Compl. ¶ 67. Officers are permitted to ask detainees to incriminate themselves during a search. *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005) ("We have 'held repeatedly that mere police questioning does not constitute a seizure.'"). Therefore, because Plaintiffs cannot amend their Complaint in opposition to a motion to

dismiss,[4] *Douglas v. Dist. of Columbia Hous. Auth.*, 981 F. Supp. 2d 78, 91 (D.D.C. 2013), Defendants did not unlawfully search for drugs in the home.

### d. The use of handcuffs

Plaintiffs allege for the first time in their opposition that they were handcuffed for the entire duration of the search. Pls.' Mem. Opp'n at 38. Because Plaintiffs cannot amend their Complaint in opposition to a motion to dismiss, *Douglas*, 981 F. Supp. 2d at 91, Defendants need not address this new argument.

### e. The Fifth Amendment

Plaintiffs erroneously rely on the Fifth Amendment. The means of executing a search are governed by the Fourth Amendment reasonableness standard. *Terry v. Ohio*, 392 U.S. 1, 28 (1968).

Defendants also note on this point that Plaintiffs do not have standing to challenge Defendants' treatment of Abimbola Idris, who is not a plaintiff in this case. *See Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.") (collecting cases).

### Conclusion

For the reasons stated above, the Court should dismiss the Complaint with prejudice.

---

[4]  Plaintiffs explicitly allege Defendants searched for drugs in their Opposition. Pls.' Mem. Opp'n at 38. The Complaint cannot reasonably be read to include any additional details on this claim. *See* Compl. generally. Plaintiffs assert that the officers ransacked the home and searched in their food, strip searched Michael Pitts, and frisked Abimbola Idris. Compl. ¶¶ 1, 69, 75, 77. In executing a search warrant, an officer is permitted to search everywhere that the items searched for could be hidden. *See, e.g., Horton v. California*, 496 U.S. 128, 141-142 (1990) (discussing plain view doctrine and holding officers can seize evidence that is immediately and apparently incriminating and is in plain view of anywhere they can lawfully search). Because the warrant lists "parts of firearms," "ammunition," "pictures," and "papers," and because those specific items could be found anywhere in the home, in the food, or on Michael Pitts's or Abimbola Idris's person, the officers' search was reasonable.

        Respectfully Submitted,

        IRVIN B. NATHAN
        Attorney General for the
        District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        /s/ *Jonathan H. Pittman*
        JONATHAN H. PITTMAN [430388]
        Chief, Civil Litigation Division Section III

        /s/ *Joseph A. González*
        JOSEPH A. GONZÁLEZ [995057]
        Assistant Attorney General

        */s/ Aaron J. Finkhousen*
        AARON J FINKHOUSEN [1010044]
        441 4th Street, N.W., Sixth Floor South
        Washington, D.C. 20001-2714
        202-724-6511 (direct)
        aaron.finkhousen@dc.gov