**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PATRICE PITTS *et al.*,<br><br>      Plaintiffs,<br><br>v.<br><br>THE DISTRICT OF COLUMBIA, *et al.*,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No.  1:14-cv-1319 (TSC)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON QUALIFIED IMMUNITY**

Plaintiffs Patrice and Michael Pitts allege the widespread use of facially insufficient, false, and misleading statements of "training" and "experience" in MPD warrant applications, the deliberate attempt to hide illegal police activity on which the application in this case was based, and a series of brutal, outrageous, and unreasonable actions by government employees inside their home.  A municipality is not entitled to qualified immunity, and the District of Columbia is clearly liable for its policy and practice of invalid MPD warrants.  The motion to dismiss the individual MPD officers should also be denied because the officers violated clearly established constitutional rights.  The Plaintiffs respectfully submit the following supplemental authority on that issue.

**I.**    **The Constitutional Rights that Defendant MPD Officers Violated in Obtaining and Executing the Search Warrant Were Clearly Established**

    **A.**    **Under Clearly Established Law, the Warrant Application Was So Lacking Probable Cause that Reliance on It Was Objectively Unreasonable**

When a warrant application is so lacking in probable cause as to render official belief in its existence unreasonable, the shield of qualified immunity is lost.  *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986) (adopting the *Leon* test for civil challenges to warrants).  The critical element in a reasonable warrant is that there is probable cause to believe that the specific things to be searched

for are located in the place to be searched.  *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978);

*see generally* Doc. 10 at 4-9; 10-12.

When police execute a warrant that wholly fails to establish a nexus between the place to be searched and evidence of a crime, executing that warrant is not objectively reasonable.  That is the proper level of generality to be applied to the qualified immunity question in the search warrant context under *Leon* and *Malley*.  *See Groh v. Ramirez*, 540 U.S. 551, 564-65 (2004).  In *Poolaw v. Marcantel*, police investigating a murder executed a warrant at the home of the suspect's parents-in-law.  565 F.3d 721, 727 (10th Cir. 2009).  The court explained that the only link between the homicide and the property was the assumption that the suspect lived there because his wife lived there part of the time.  *Id.* at 734.  "[T]he necessity of a nexus between the suspected criminal activity and the particular place to be searched is so well established that in the absence of such a connection, the affidavit and resulting warrant are so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Id.*  The court rejected the idea that a statement in the affidavit about an officer's expertise could create probable cause because "an officer's expertise cannot be invoked to nullify the Supreme Court's holding that mere propinquity is insufficient to establish probable cause."  *Id.* at 732.  The court therefore held that the officers who obtained the warrant were not entitled to qualified immunity.  *Id.* at 734.

The affidavit in this case was devoid of any information establishing a nexus between the Pitts's home and evidence of a crime.  Defendants searched the home solely based on Defendant Pugh's suspicion that a criminal lived there before his arrest.  The key basis for the warrant was Defendant Pugh's attempt to invoke generic training to nullify Supreme Court precedent that mere "propinquity is insufficient."  There is no reasonable argument about probable cause here—neither party has located a single example upholding the search of a home solely because someone who

lived there had previously possessed a gun.  *Cf. Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (holding that "clearly established" does not mean that "the very act in question" has been held unlawful, but that, in light of pre-existing law, the unlawfulness is apparent).  The fact that police outside D.C. have rarely if ever attempted such a radical departure from basic principles does not immunize officers who ignore the clearly established nexus requirement in novel ways.  *See Wesby v. District of Columbia*, 765 F.3d 13, 26 (D.C. Cir. 2014) ("Qualified immunity need not be granted every time police act unlawfully in a way that courts have yet to specifically address.").

### B. It Was Objectively Unreasonable for Officer Pugh to Include False Statements and Material Omissions in the Warrant Application

The Supreme Court has long held that a police officer violates the Fourth Amendment if he deliberately or with reckless disregard for the truth makes material false statements or omits material facts in a warrant application.  *Franks v. Delaware*, 438 U.S. 154, 171 (1978), *see also United States v. Leon*, 468 U.S. 897, 923 (1984).  The clearly established test requires correcting the falsities, inserting the omissions, and conducting a probable cause analysis de novo.[1]

Perhaps the single most important fact in this case is that Defendant Pugh omitted from the warrant application that the MPD trains its officers that, to the extent gun possessors ever possess

---

[1] *See Miller v. Prince George's Cty., MD*, 475 F.3d 621, 632 (4th Cir. 2007) (holding that qualified immunity did not protect officer who had made misrepresentations and omissions because the law forbidding police from making material misrepresentations or omissions in a warrant affidavit was "unquestionably clearly established"); *Burke v. Town of Walpole*, 405 F.3d 66, 88 (1st Cir. 2005) (rejecting qualified immunity because of the "clearly established prohibition on material omissions by officers"); *Holmes v. Kucynda*, 321 F.3d 1069, 1084 (11th Cir. 2003) (rejecting immunity because "the law was clearly established in 1998 that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest"); *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1295 (9th Cir. 1999) ("We begin with the precept that a police officer who recklessly or knowingly includes false material information in, or omits material information from, a search warrant affidavit cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost."); *Burk v. Beene*, 948 F.2d 489, 494 (8th Cir. 1991) (rejecting qualified immunity because "if material information in the affidavit was known by her to be false, or if she had no reasonable basis for believing it, then it was not objectively reasonable for her to use it to obtain an arrest warrant"); *Olson v. Tyler*, 771 F.2d 277, 282 (7th Cir. 1985) ("[I]n cases in which suppression would be warranted because an officer was dishonest or reckless in preparing a warrant affidavit, that officer would not enjoy good faith immunity for civil damages.").

the items Defendant Pugh sought (which they rarely do, Doc. 1 at ¶ 31-33), they would possess

them either in their home "or" in a variety of other places that are not their homes.  Doc. 1 at ¶ 34-

35.  As the Complaint and hundreds of other public court documents reveal, officers are trained

that a gun arrestee might possess related items either in their home, or in the homes of friends or

relatives, or in the homes of associates, or in stash houses, or in other locations to which they have

access.  The most important section of the Plaintiffs' previous briefing explained why it is

axiomatic that, if the government believes that evidence exists in one of several homes, it cannot

search any one of those homes without particularized evidence that the items sought will be found

there. Doc. 10 at ECF# 22-24; *see also United States v. Busk*, 693 F.2d 28 (3d Cir. 1982) (holding

invalid a warrant that authorized search of a multiple dwelling house where officer only had

information indicating that illegal activity was occurring in one unit because "[a] warrant

authorizing entry into all apartments in a multiple dwelling house when probable cause has been

shown for the search of only one of them does not satisfy the particularity requirement of the fourth

amendment").  When the full and accurate information is added, and this Court makes the de novo

probable cause determination required by *Franks*, it is clear that that probable cause does not exist.[2]

### C.  It Was Clearly Established that the Warrant Application Could Not Rely on Facts that Came from the Illegal Arrest of Tyrone Pitts.

Illegally obtained evidence cannot form the basis of a warrant.  Doc. 10 at 25; *see Alderman*

*v. United States*, 394 U.S. 165, 177 (1969) ("Nothing seen or found on the premises may legally

form the basis for an arrest or search warrant."); *United States v. Davis*, 430 F.3d 345, 358 n.4 (6th

---

[2] Defendant Pugh's affidavit also contained other false statements and material omissions.  Defendant Pugh swore, based on MPD training and experience, that Mr. Pitts "must have" additional bullets at home despite the fact that MPD training and experience suggested that that was likely not true.  Doc 1 at ¶ 18.  He claimed that they were likely to find other items despite the fact that, based on MPD's actual experience, it was far more likely that Defendants would not find such items.  Doc 1 at ¶ 31-33.  He also falsely recounted the initial stop, leading the issuing judge to believe that the discovery of the gun was consensual when it was, in fact, the fruit of an unconstitutional seizure.  These false statements and omissions remove the shield of qualified immunity and make Defendant Pugh liable if an application with corrected information lacks probable cause on this Court's de novo review.

Cir. 2005) ("[W]e agree with the numerous other circuits that have held that the *Leon* good-faith exception is inapplicable where a warrant was secured in part on the basis of an illegal search or seizure."); *United States v. Herrera*, 444 F.3d 1238, 1249 (10th Cir. 2006); *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996). Tyrone Pitts was stopped on the street by MPD officers and searched illegally. Doc. 1 at ¶ 44. Defendant Pugh's use of the evidence from this illegal search as the basis for the warrant application while hiding from the judge its illegality was objectively unreasonable, and he therefore is not entitled to qualified immunity.

### D.  Defendants' Execution of the Search Warrant Violated Clearly Established Law

#### 1.  The Failure to Knock and Announce

The principle of knock and announce is so well established as to be "embedded in Anglo-American law." *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995). "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997); *Trent v. Wade*, 776 F.3d 368, 383 (5th Cir. 2015) ("[A]ny reasonable officer would know that he was violating the rule if he did not have reasonable suspicion that knocking and announcing would be dangerous or futile or that it would inhibit effective investigation of the crime."); *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012) ("Arcuri's proffered justifications for his team's no-knock entry—evidence preservation and officer safety—were based primarily on generalities rather than particularized suspicion, and his position is therefore virtually indistinguishable from the type of blanket rule repudiated in *Richards*."); *see also Bonner v. Anderson*, 81 F.3d 472, 476 (4th Cir. 1996).

Courts reject qualified immunity in cases where police knew the suspect was in custody and had no reason to believe that others in the home might be dangerous.  In *Gould v. Davis*, 165 F.3d 265 (4th Cir. 1998), Gould's son was arrested and held in custody as a suspect in a string of robberies.  Police obtained a warrant to search Gould's home and smashed through the door without knocking and announcing.  *Id.* at 268.  The court rejected qualified immunity, finding the argument that "Gould, Sr. might use a weapon because of the criminal propensities of his children" was "inconsistent with clearly established law."  *Id.* at 271.  "Given these circumstances, the officers essentially ask us to hold that a reasonable officer, in 1992, would have believed that a parent loses basic, Fourth Amendment protections in his own home when his children have been charged in a crime.  We think it obvious that the officers' argument cannot be correct."  *Id.*

Defendants burst into the Pitts home despite a complete absence of exigent circumstances.  They knew that Tyrone Pitts was already in custody and had no reason to believe that anyone else in the home would present a danger to them.  Because clearly established law forbade Defendants violent, unannounced entry into the home, Defendants are not entitled to qualified immunity.

## 2.   Strip Searching Michael Pitts in Front of His Mother and Partner

It is clearly established that strip searches conducted without individualized justification are unlawful.  *See Ybarra v. Illinois,* 444 U.S. 85, 90-93 (1979).  In *Ybarra*, a tavern customer was subjected to an invasive search when he was present at the establishment subject to a search warrant.  *Id.* at 88.  The Supreme Court held the search of Ybarra unconstitutional because:

> Not only was probable cause to search Ybarra absent at the time the warrant was issued, it was still absent when the police executed the warrant.  Upon entering the tavern, the police did not recognize Ybarra and had no reason to believe that he had committed, was committing, or was about to commit any offense under state or federal law.  Ybarra made no gestures indicative of criminal conduct, made no movements that might suggest an attempt to conceal contraband, and said nothing of a suspicious nature to the police officers.

*Id.* at 90–91. The Court observed that the probable cause standard "cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Id.* at 91. *Ybarra* and subsequent case law on strip searches provided fair warning that strip-searching Michael Pitts was unlawful. *See Doe v. Groody*, 361 F.3d 232, 244 (3rd Cir. 2004) (holding that strip searching two residents of a home without probable cause and beyond the scope of the warrant violated their clearly established Fourth Amendment rights); *Williams v. Kaufman Cty.*, 352 F.3d 994, 1006 (5th Cir. 2003) (holding that the law was clearly established that strip searching people, about whom the police had no individualized probable cause of weapon or drug possession, was unlawful).

Defendant MPD officers had no reason to believe that Michael Pitts had committed any crime. He was simply present in the home at the time the officers executed their warrant. His mere presence was not sufficient to create probable cause to probe his genitals and anus in front of his mother and romantic partner.

### 3.   Exceeding the Scope of the Warrant

It is clearly established that exceeding the scope of a search warrant is unlawful. *Horton v. California*, 496 U.S. 128, 140 (1990)*; Bowling v. Rector*, 584 F.3d 956, 971 (10th Cir. 2009). Defendants exceeded the scope of the warrant in several ways. Doc 1. at ¶ 93. The officers also prolonged and expanded their search by searching for drugs even though the warrant explicitly authorized only a search for firearms and related accessories. *Id.* These actions flouted clearly established law.

### 4.   Handcuffing the Family Without Justification

*Michigan v. Summers* holds that the police have *limited* authority to detain an occupant of a home while the premises are searched, when the detention is neither prolonged nor unduly intrusive, and when police are executing a valid warrant. 452 U.S. 692, 705 (1981). Claims of

excessive force (such as the use of handcuffs) during such a detention ask whether the force is "reasonable" considering the severity of the crime, whether the suspect poses a flight risk, and whether he is actively resisting arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989).  In *Muehler v. Mena*, 544 U.S. 93, 100 (2005), the Court found a detention reasonable because "wanted gang" members lived in the home and because the "search of a gang house for dangerous weapons" was conducted after a violent drive-by shooting.  The Court held that handcuffs were an additional intrusion on liberty, but that *Mena* was "no ordinary search." *Id.* Justice Kennedy, the controlling vote, wrote separately to ensure that "handcuffing during searches becomes neither routine nor prolonged."  *Id.* at 102.  While *Mena* involved gang violence and a shooting, this case was as routine as searches go.  No violent crime had occurred, Ms. Pitts was calm and severely physically disabled, and the criminal who was the object of the search was already in police custody.

It is clearly established that absent any indication that a person poses a threat or is attempting to evade detention, it is unreasonable to handcuff him.  *See Turnmon v. Jordan*, 405 F.3d 202, 208 (4th Cir. 2005) ("We conclude that on March 10, 2001, it would have been clear to a reasonable officer that he could not point his gun at an individual's face, jerk him from his room, and handcuff him when there was no reasonable suspicion that any crime had been committed, no indication that the individual posed a threat to the officer, and no indication that the individual was attempting to evade detention."); *Meredith v. Erath*, 342 F.3d 1057, 1064 (9th Cir. 2003) (holding that it was clearly established that detaining a person in handcuffs during the execution of a search warrant, in the absence of justifiable circumstances, would violate the Fourth Amendment).

In *Heitschmidt v. City of Houston*, police executed a search warrant at Heitschmidt's home that he shared with someone suspected of a crime.  161 F.3d 834, 835 (5th Cir. 1998).  The officers handcuffed Heitschmidt and detained him without a restroom break for more than four hours.  *Id.*

at 836.  The court held that the justification supporting Heitschmidt's detention was unpersuasive

because Heitschmidt was not trying to flee and there was no reason to believe that he was involved

in any crime at the time the home was searched, or would use any hypothetical gun that he might

have been able to access.  *Id.*  The court explained that there was "no need to place Heitschmidt in

painful restraints" because "Heitschmidt could have been effectively restrained, and the police

interest in facilitating the search could have been vindicated, with a far less intrusive detention."

*Id.* at 839.  The court therefore held that the officers' conduct was not objectively reasonable.  *Id.*

at 840.  *See also Franklin v. Foxworth*, 31 F.3d 873, 875 (9th Cir. 1994) (holding that officers

executed the warrant unreasonably by removing a semi-naked man from his bed without providing

clothing and then forcing him to remain sitting handcuffed in his living room for two hours).

### E.  Defendants' Conduct Shocks the Conscience Under Clearly Established Law

Conduct by government officials that "shocks the conscience" violates the Due Process

Clause.  *See Rochin v. California*, 342 U.S. 165, 172 (1952) (holding that the forced pumping of

a suspect's stomach in search of evidence violates the "decencies of civilized conduct").  When

police act with a purpose to cause harm unrelated to the legitimate object of an arrest or seizure, it

satisfies the element of arbitrary conduct that shocks the conscience under the Due Process Clause.

*County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998).  In other words, "conduct intended to

injure in some way unjustifiable by any government interest is the sort of official action most likely

to rise to the conscience-shocking level" at issue in substantive due process cases.  *Id.* at 844.

Defendant MPD officers performed a humiliating and unjustified strip search of Mr. Pitts's

genitals and anal cavity—apparently looking for drugs even though the warrant authorized only a

search for firearms and related accessories.  Doc. 1 at ¶ 93.  The officers also forcibly removed the

disabled Ms. Pitts from her bed and handcuffed her for the duration of the home search even though

she posed no threat and even though the metal handcuffs made her unable to move because she could not use her cane.  *Id.*  They taunted and threatened Patrice and Michael, including telling them that they were drug criminals, that officers knew there were drugs in the home, that officers would jail their loved ones, and that officers would render them homeless.  *Id.*  None of this was related to a legitimate government goal.  This is sadistic conduct that shocks the conscience.

## II.     All Defendant MPD Officers Are Liable for the Illegal Execution of the Search Warrant and Defendant Pugh Is Liable for the Issuance of the Warrant

Defendant Pugh prepared and swore under oath the warrant application.  Doc. 1 at ¶ 11. He is therefore liable for the issuance of the unconstitutional warrant.  The Plaintiffs have not alleged that any other officer was involved in the issuance of the warrant.  Therefore, Plaintiffs' allegations relating to the issuance of the search warrant are directed solely at Defendant Pugh.[3]

The other Defendant MPD officers are liable for their decision to execute the warrant and their conduct while executing it.  "It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted."  *Groh*, 540 U.S. at 563.  All officers are liable under § 1983 if they knew or should have known that their conduct would result in a violation of the plaintiff's Fourth Amendment rights.  *O'Rourke v. Hayes*, 378 F.3d 1201, 1210 (11th Cir. 2004) ("Whether or not the police officers accompanying Hayes decided to enter O'Rourke's office, their unconstitutional behavior did not relieve Hayes of his responsibility to decide for himself whether to violate clearly established constitutional rights . . . ."); *see also Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) ("[A]n officer who does not enter an apartment, but stands at the door, armed with his gun, while other officers conduct the search, can be a full active participant in the search and therefore can be subject to § 1983 liability.).

---

[3] The other officers are liable for executing the warrant for all of the reasons alleged in the Complaint, including, for example, that the warrant was clearly lacking in probable cause and that all of them knew from the same training that the statements in the application were false and misleading.

Respectfully submitted,

*/s/ Alec Karakatsanis*
Alec Karakatsanis (D.C. Bar No. 999294)
Phil Telfeyan (D.C. Bar No. 1029157)
Katherine Hubbard (California Bar No. 302729, admitted to practice under Local Rule 83.2(g))

Equal Justice Under Law
601 Pennsylvania Avenue NW
South Building — Suite 900
Washington, D.C. 20004
(202) 681-2409
*Attorneys for Plaintiffs*

## REQUEST FOR ORAL ARGUMENT

The Plaintiffs hereby request oral argument on these issues to the extent that the Court deems such argument to be helpful.